**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

KATHY J. MOORE,                *

                            *

     Plaintiff,         *

                            *

vs.                       *     CIVIL ACTION NO. 18-00311-KD-B

                            *

JIMMY H. BAKER, *et al.*,    *

                            *

     Defendants.       *

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Jimmy H. Baker, Board of Trustees of Alabama Community College System, Kay Ivey, Al Thompson, Frank Caldwell, Crystal Brown, Milton A. Davis, Chuck Smith, Blake McAnally, Wallace Community College Selma,[1] and James Mitchell's partial motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted (Doc. 28), and Defendants Ron Fantroy and Susan Foy's motion to dismiss (Doc. 41). The motions, which have been fully briefed, have been referred to the undersigned Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration of all matters

---

[1] In their motion, Defendants state that Wallace Community College Selma was incorrectly named in Plaintiff's complaint as Wallace State Community College Selma. However, only the caption of Plaintiff's complaint refers to the college as Wallace State Community College Selma. In the body of her complaint, Plaintiff refers to the college as Wallace Community College Selma.

presented, the undersigned RECOMMENDS, for the reasons stated herein, that Defendants' motions be GRANTED IN PART and DENIED IN PART.

## I.   PROCEDURAL BACKGROUND

Plaintiff Kathy S. Moore ("Plaintiff") commenced this action against Defendants by filing a complaint in the United States District Court for the Middle District of Alabama. (Doc. 1).

On February 23, 2018, all of the named Defendants, except for Defendants Ron Fantroy and Susan Foy, who had not yet been served with Plaintiff's lawsuit, filed a partial motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. (Doc. 28). On the same date, the Defendants filed a motion to transfer venue to the Southern District of Alabama. (Doc. 29). After being served, Defendants Fantroy and Foy filed a motion to dismiss and motion to transfer (Doc. 41), in which they essentially joined in and incorporated the arguments made in the other Defendants' earlier motion to dismiss and motion to transfer. On July 13, 2018, United States District Judge Myron H. Thompson of the Middle District of Alabama entered an order that granted the Defendants' motions to transfer venue, transferred this case to the Southern District of Alabama, and left all other pending motions, including Defendants' motions to dismiss, for resolution by this Court. (Doc. 56). On the same date,

Defendants' motions to dismiss were referred to the undersigned for entry of a report and recommendation.

## II.  FACTUAL BACKGROUND[2]

Plaintiff, an African-American female who was fifty-seven years old at the time her complaint was filed, alleges that she was hired as Director of Student Support Services at Wallace Community College Selma ("Wallace College") in 2006, and that on August 31, 2015, Wallace College's President, Dr. James Mitchell ("President Mitchell"), an African-American male, informed her that she would be reassigned to the new position of Adult Education Counselor/Student Services Coach as of October 1, 2015. (Doc. 1 at ¶¶ 5, 18, 40-41). Plaintiff contends that the reassignment was a demotion because she no longer supervised any employees, no longer had decision-making authority, and was no longer responsible for creating and administering a budget. (Id. at ¶42).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 19, 2016, asserting that she was involuntarily transferred because of her gender and age. (Id. at ¶43). The EEOC issued Plaintiff a Dismissal and Notice of Rights dated March 3, 2017.[3] (Id. at ¶45).

---

[2]  For purposes of resolving Defendants' motions to dismiss, the Court accepts as true the facts alleged in Plaintiff's complaint.

[3]  Plaintiff has not filed suit on the allegations contained in her February 2016 EEOC charge. (Doc. 1 at ¶45).

Wallace College posted the Director of Student Support Services position on April 28, 2016, and then again on July 13, 2016. (Id. at ¶52). In the first posting, the position was advertised on salary schedule C3 with a salary range of $38,000 to $53,000 per year, which was consistent with Plaintiff's classification when she held the position.[4] (Id. at ¶56). When the position was posted the second time, no salary range was included, and the job was advertised as being on schedule C rather than schedule C3. (Id. at ¶57). According to Plaintiff, the omission of the salary range on the job announcement violated Alabama Community College System ("ACCS") Uniform Guidelines for Recruitment and Selection ("Uniform Guidelines") and permitted President Mitchell to offer the position at a higher salary range. (Id. at ¶¶ 57, 59).

Effective December 1, 2016, Wallace College hired Herbert Hoover Thomas ("Thomas"), a male approximately five years younger than Plaintiff, as Director of Student Support Services. (Id. at ¶¶ 47-48). Plaintiff alleges that Thomas is not as qualified as her and did not meet the position's minimum requirements because he lacked experience designing, managing, or implementing a student support services program and lacked at least five years of

---

[4]     However, Plaintiff's salary as Director of Student Support Services exceeded that range as the result of grandfathering, and her highest salary in the position was $58,500. (Doc. 1 at ¶66).

supervisory experience. (Id. at ¶¶ 49, 52, 60-65). Thomas was hired at an annual salary of $75,000, which was $16,500 more than the highest salary paid to Plaintiff when she held the same position and performed the same duties. (Id. at ¶51).

On May 25, 2017, Plaintiff filed a second charge of discrimination with the EEOC, this time over Thomas' hiring. (Id. at ¶69). The EEOC issued Plaintiff a Dismissal and Notice of Rights dated October 4, 2017. (See id. at ¶3(b)). The instant action followed.

In her complaint, Plaintiff names the following individuals or entities as Defendants: Jimmy H. Baker ("Chancellor Baker"), in his official capacity as Chancellor of the ACCS; the Board of Trustees of the ACCS ("ACCS Board of Trustees"); Alabama Governor Kay Ivey, in her official capacity as President of the ACCS Board of Trustees; Al Thompson, Ron Fantroy, Susan Foy, Frank Caldwell, Crystal Brown, Milton A. Davis, Chuck Smith, and Blake McAnally, each in their official capacities as members of the ACCS Board of Trustees;[5] Wallace College; and President Mitchell, both individually and in his official capacity as Wallace College's President. (Doc. 1 at ¶¶ 6-18).

---

[5]    The Court will hereinafter follow Plaintiff's lead by referring to Governor Ivey and the other eight individual ACCS Board of Trustees members, collectively, as the "Trustee Defendants." (See Doc. 1 at ¶23).

In count one of her complaint, Plaintiff alleges that Wallace College and the ACCS Board of Trustees discriminated against her on the basis of gender and thus violated Title VII by paying her less than her male successor, Thomas, for performing the same job. (Id. at ¶¶ 70-78). In count two, Plaintiff alleges that Wallace College and the ACCS Board of Trustees violated the Equal Pay Act by paying her a lower salary than that paid to a similarly-situated male employee in the same position. (Id. at ¶¶ 79-87). Plaintiff's third count seeks relief under 42 U.S.C. § 1983 based on allegations that President Mitchell in his individual capacity, Chancellor Baker in his official capacity, and the individual Trustee Defendants in their official capacities, violated the Fourteenth Amendment's Equal Protection clause by intentionally discriminating against Plaintiff in her pay because of her sex. (Id. at ¶¶ 88-96). In count four, Plaintiff alleges that Wallace College and the ACCS Board of Trustees discriminated against her on the basis of her age by paying her less than a similarly-situated younger employee, in violation of the ADEA. (Id. at ¶¶ 97-105). Count five alleges that Wallace College and the ACCS Board of Trustees retaliated against Plaintiff for filing her first EEOC charge of discrimination by intentionally paying her less than her male successor, in violation of Title VII and the ADEA. (Id. at ¶¶ 106-118). Plaintiff seeks a declaratory judgment that Defendants violated her rights through their employment practices,

an order enjoining Defendants from engaging in discriminatory practices on the basis of gender, age, and retaliation, an order requiring Defendants to pay her back pay with interest, front pay, compensatory damages, punitive damages, liquidated damages, and nominal damages, and an award of costs and attorneys' fees. (Id. at pp. 22-23).

Defendants seek the dismissal of a number of Plaintiff's claims pursuant to Rule 12(b)(1) and Rule 12(b)(6), on the basis of Eleventh Amendment immunity, failure to state a claim, failure to exhaust administrative remedies, and untimeliness. (Docs. 28, 41). The motions have been fully briefed and are now ready for resolution.[6]

### III. **STANDARD OF REVIEW**

Immunity issues are generally construed as challenges to the subject-matter jurisdiction of a federal court and are thus properly raised under Rule 12(b)(1), at least where, as here, the jurisdictional challenge does not implicate the underlying merits of the case. See Boglin v. Bd. of Trs. of Ala. Agric. & Mech. Univ., 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018). A challenge to a district court's exercise of subject matter jurisdiction may

---

[6] Although there were two motions to dismiss filed by separate groups of Defendants (Docs. 28, 41), only the earlier-filed motion contains substantive argument. Accordingly, in its analysis of the issues below, the Court will refer to Defendants' "motion" in the singular.

take one of two forms: a facial or factual attack. Id. In a facial attack, a court simply must examine the pleading and determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, while accepting the plaintiff's allegations as true and construing them most favorably to the plaintiff. Cardwell v. Auburn Univ. Montgomery, 941 F. Supp. 2d 1322, 1327 (M.D. Ala. 2013). A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the court may consider matters outside the pleadings and weigh conflicting evidence. Boglin, 290 F. Supp. 3d at 1261. Since Defendants do not submit any extrinsic evidence bearing on this Court's jurisdiction, the Court construes Defendants' immunity arguments as a facial attack under Rule 12(b)(1).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss an action on the ground that the allegations in the complaint fail to state a claim upon which relief can be granted. On such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Little v. City of N. Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to

the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

However, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

Rule 12(b)(6) is read in consideration of Federal Rule of Civil Procedure 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests.'" See Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v.
Gibson, 355 U.S. 41, 47 (1957)).  Although Rule 8 does not require
detailed factual allegations, it does demand "more than an
unadorned, the-defendant-unlawfully-harmed-me accusation."
Iqbal, 556 U.S. at 678.  To survive a motion to dismiss, a complaint
must state on its face a plausible claim for relief, and "[a] claim
has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Id.  Unless a
plaintiff has "nudged [her] claims across the line from conceivable
to plausible," the complaint "must be dismissed."  Twombly, 550
U.S. at 570.  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  Iqbal, 556
U.S at 678 (quoting Twombly, 550 U.S at 556).

### IV.  ANALYSIS

#### A. The Eleventh Amendment Bars Plaintiff's ADEA Claims Against Wallace College and the ACCS Board of Trustees (Counts Four and Five).

In their motion, Defendants first argue that Wallace College
and the ACCS Board of Trustees are instrumentalities of the state
of Alabama and, as such, are immune from Plaintiff's ADEA claims
under the Eleventh Amendment of the United States Constitution.
(Doc. 28 at 3).  The Eleventh Amendment states: "The Judicial power

of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed the Eleventh Amendment "to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (citations and internal quotation marks omitted). However, the Eleventh Amendment bar to suit is not absolute, because states may consent to be sued in federal court and, in certain cases, Congress may abrogate states' sovereign immunity. Id.

The ADEA "makes it unlawful for an employer, including a State, 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age.'" Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 62 (2000) (quoting 29 U.S.C. § 623(a)(1)). Although Congress expressed its intent to abrogate states' Eleventh Amendment immunity against ADEA claims, the United States Supreme Court has "held that Congress was without authority to abrogate states' sovereign immunity against ADEA claims." Stroud v. McIntosh, 722 F.3d 1294, 1298 (11th Cir. 2013) (citing Kimel, 528 U.S. at 91-92).

In _Kimel_, the Supreme Court explained that because of "the indiscriminate scope of the [ADEA's] substantive requirements, and the lack of evidence of widespread and unconstitutional age discrimination by the States," the ADEA "is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment." _Kimel_, 528 U.S. at 91. As that section provides the only recognized constitutional basis for abrogating states' Eleventh Amendment immunity, _see id._ at 80, the Supreme Court concluded that "[t]he ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid." _Id._ at 91.

Alabama has not waived its immunity from ADEA claims. _Stroud_, 722 F.3d at 1303. Indeed, "Alabama retains a 'nearly impregnable' immunity from suit, and neither the state legislature nor any other state authority can waive it." _Id._ (internal citations omitted). Further, "Alabama may assert the defense of immunity from ADEA liability in state court." _Id._

It is well-settled that a state educational institution, such as a community college, is an "arm of the state" and "is entitled to Eleventh Amendment immunity." _See, e.g., Morris v. Wallace Cmty. College-Selma_, 125 F. Supp. 2d 1315, 1335 (S.D. Ala. 2001). Likewise, "Eleventh Amendment immunity extends to . . . boards of trustees of state universities." _Greenwell v. Univ. of Ala. Bd. of Trs._, 2012 U.S. Dist. LEXIS 118917, at *36, 2012 WL 3637768, at *10 (N.D. Ala. Aug. 22, 2012).

Plaintiff does not dispute that both "the ACCS Board [of Trustees] as a corporate body" and Wallace College are state entities to which Alabama's Eleventh Amendment immunity extends. (Doc. 44 at 4). Plaintiff also acknowledges the Supreme Court's ruling in Kimel that Congress did not validly abrogate state immunity from ADEA claims. (Id.). However, Plaintiff argues that Kimel "does *not* defeat her private damage action against state entities" because the Fourteenth Amendment's Equal Protection clause can still be violated by age discrimination that is not rationally related to a legitimate state interest. (Id. at 5) (emphasis in original). In support of her argument, Plaintiff cites the cases of Tennessee v. Lane, 541 U.S. 509 (2004), and United States v. Georgia, 546 U.S. 151 (2006), where the Supreme Court found that Title II of the Americans with Disabilities Act of 1990 ("ADA") validly abrogates states' sovereign immunity insofar as it creates a private cause of action for individuals against states for conduct that actually violates the Fourteenth Amendment. Based on the reasoning in those cases, Plaintiff contends that the Court may find that "the ADEA's abrogation of state immunity is valid as applied to private damage claims involving conduct that 'actually violates' constitutional rights." (Doc. 44 at 7).

Plaintiff's argument is unpersuasive. Her argument and the cases she relies upon do not alter the Supreme Court's holding in

Kimel, nor do they overcome the clear precedent that state agencies cannot be held liable under the ADEA. See Foster v. Auburn Univ. Montgomery, 2012 U.S. Dist. LEXIS 32378, at *6, 2012 WL 786959, at *2 (M.D. Ala. Mar. 12, 2012) ("The Plaintiff raises claims under both the ADEA and Title I of the ADA. The Supreme Court has directly addressed whether those statutes properly abrogated Eleventh Amendment state sovereign immunity and answered in the negative. Accordingly, a private citizen, like Foster, is barred by the Eleventh Amendment from bringing claims for monetary damages or injunctive relief against AUM under the ADEA or Title I of the ADA.") (internal citations omitted); Jurriaans v. Ala. Coop. Extension Sys., 2017 U.S. Dist. LEXIS 125238, at *5, 2017 WL 3902571, at *2 (M.D. Ala. Aug. 7, 2017), report and recommendation adopted, 2017 U.S. Dist. LEXIS 143585, 2017 WL 3902570 (M.D. Ala. Sept. 6, 2017) ("The ADEA does not constitute a valid abrogation of sovereign immunity by Congress. And the State of Alabama has not waived its sovereign immunity. Therefore, both defendants are immune from suit as to all claims of employment discrimination brought pursuant to the ADEA, and these claims will be dismissed.") (internal citations omitted); England v. Hillsborough Cmty. Coll., 546 F. App'x 881, 884 (11th Cir. 2013) ("As for the ADEA claim, in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals. As an arm of the state, a Florida community college like defendant . . . enjoys immunity

14

from suit.") (internal citations and quotation marks omitted).

Accordingly, Wallace College and the ACCS Board of Trustees are immune from Plaintiff's ADEA claims, and Plaintiff's ADEA claims against Wallace College and the ACCS Board of Trustees are due to be dismissed.[7]

> **B. Plaintiff has Plausibly Alleged that the ACCS Board Of Trustees is her "Employer" for the Purposes of Title VII and the Equal Pay Act (Counts One, Two, and Five).**

Defendants argue that Plaintiff's complaint fails to state a claim against the ACCS Board of Trustees under Title VII, the ADEA,[8] and the Equal Pay Act because the ACCS Board of Trustees was not Plaintiff's "employer" for the purposes of these statutes. (Doc. 28 at 4). Specifically, Defendants maintain that the "Board of Trustees was not [Plaintiff's] employer, and her allegations are devoid of any claim that the Board or any Board member had

---

[7]    Plaintiff alternatively requests that, if the Court finds her ADEA claims against Wallace College and the ACCS Board of Trustees to be barred by the Eleventh Amendment, she be permitted to amend her ADEA claims to pursue prospective equitable relief against "relevant" individual defendants in their official capacities. (Doc. 44 at 8-9). However, Plaintiff has not filed a proposed amendment; thus, the Court cannot assess whether or not it would be futile.

[8]    Because Plaintiff's ADEA claims against the ACCS Board of Trustees are clearly precluded by the Eleventh Amendment, the Court need not consider the ACCS Board of Trustees' status as Plaintiff's "employer" under the ADEA. Instead, the Court will limit its inquiry in this section to whether the complaint contains sufficient factual allegations to support the inference that the ACCS Board of Trustees was Plaintiff's "employer" for Title VII and Equal Pay Act purposes.

direct involvement in her employment or in the specific hiring decisions of the College." (Id.). Plaintiff acknowledges that the ACCS Board of Trustees' status as her "employer" is a required element of her Title VII and Equal Pay Act claims against the ACCS Board of Trustees. (Doc. 44 at 9). Plaintiff contends that her complaint contains detailed allegations of the ACCS Board of Trustees' significant regulation, supervision, and shared control of community colleges' employment relationships with employees that suffice to show that the ACCS Board of Trustees was her employer for the purposes of those statutes. (Id. at 11, 17). Because the term "employer" is defined differently under Title VII and the Equal Pay Act, the Court will address *seriatim* whether Plaintiff has plausibly alleged that the ACCS Board of Trustees was her employer under Title VII and the Equal Pay Act.

### i. Title VII.

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). A plaintiff must show that the defendant had the requisite number of employees; however, the term "employer" is to be construed liberally. Lyes v. City of Riviera Beach, Fla., 166 F.3d 1332, 1341 (11th Cir. 1999) (en banc);

<u>McKenzie v. Davenport-Harris Funeral Home</u>, 834 F.2d 930, 933 (11th Cir. 1987).

The Eleventh Circuit has instructed courts to look beyond the nominal independence of an entity and ask whether two or more ostensibly separate entities may be treated as a single, integrated enterprise when determining whether they qualify as an "employer" coming within the coverage of Title VII. <u>Lyes</u>, 166 F.3d at 1341. The Eleventh Circuit has identified three situations where it is appropriate to aggregate multiple entities and treat them as a single employer for the purposes of Title VII:

(1) The "single employer" test - where two entities are highly integrated with respect to ownership and operations;

(2) The "joint employer" test - where the two entities contract with each other for the performance of a task, and one entity has sufficient control over the terms and conditions of the other's employees; and

(3) The "agency" test - where an employer delegates sufficient control over its employees to a third party.

<u>Id.</u>

When two entities have been declared separate and distinct under state law, there is a presumption that the entities are separate for Title VII purposes. <u>Id.</u> at 1344. To overcome the presumption of separateness, a plaintiff must establish that the

state's purpose in creating or maintaining nominally separate entities was to evade the reach of federal employment law or identify other circumstances that clearly indicate that the entities are integrated. Id. at 1344-45. The latter method includes considering factors such as: the authority to hire, transfer, promote, discipline, or fire; authority to establish work schedules or assignments; and the obligation to pay or the duty to train. Id. at 1345.

Here, Plaintiff has alleged facts to show that Wallace College and the ACCS Board of Trustees should be treated as a single employer. For instance, Plaintiff asserts that the ACCS Board of Trustees has the authority to make rules and regulations for the governance of each of the community and technical colleges, including prescribing qualifications for faculty and establishing, publishing, and maintaining an annual salary schedule for each community and technical college employee classification. (Doc. 1 at ¶24). Plaintiff alleges that although the chancellor has the authority to act and make decisions concerning the management and operation of the community and technical colleges, including the authority to reverse any appointment or assignment of personnel determined to be contrary to any statute or Board policy, the ACCS Board of Trustees has delegated this authority to him such that his exercise of these powers is subject to the Board's approval. (Id. at ¶¶ 27, 35). Plaintiff also alleges that the Wallace

College President is directly responsible to the chancellor and the ACCS Board of Trustees for the college's day-to-day operation and serves at the pleasure of the ACCS Board of Trustees. (Id. at ¶¶ 30-31). Plaintiff further asserts that President Mitchell, as Wallace College's President, violated or failed to comply with the Board's salary practices and procedures, as well as federal statutes, in setting the salary of Plaintiff's replacement, and that Chancellor Baker and the ACCS Board of Trustees knew of the violations and failed to take action to reverse or rectify the violation of the Board's policies and procedures and federal anti-discrimination laws. (Id. at ¶¶ 36-39).

These allegations suffice, at this stage of the proceedings, to support a plausible finding that the ACCS Board of Trustees and its agents, including Chancellor Baker, maintained sufficient supervision, control, and authority over the terms and conditions of employment for Wallace College employees such that the ACCS Board of Trustees and Wallace College should be aggregated as Plaintiff's "employer" for Title VII purposes.

While the Court recognizes that Plaintiff bears a heavy burden to prove that aggregation is appropriate under the circumstances, aggregation is a fact-specific inquiry that is often better left to summary judgment. See Williams v. Ga. Stevedore Ass'n, Inc., 2013 U.S. Dist. LEXIS 36857, at *15-16, 2013 WL 1130741, at *5-6 (S.D. Ga. Mar. 18, 2013); Walker v. Sumter Cnty. Comm'm, 2008 U.S.

Dist. LEXIS 129711, at *36, 2008 WL 11377746, at *14 (N.D. Ala. Oct. 2, 2008); Rice v. James, 2018 U.S. Dist. LEXIS 79111, at *11, 2018 WL 2164885, at *4 (S.D. Ga. May 10, 2018).

ii. **Equal Pay Act.**

To make a prima facie case under the Equal Pay Act, an employee "must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992) (internal quotation marks and citations omitted). The Equal Pay Act's definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Equal Pay Act defines "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." Id. at § 203(a). The term "employer" is defined more broadly under the Equal Pay Act than under the common law to achieve the Act's remedial purposes. Marshall v. Miller, 873 F. Supp. 628, 632 (M.D. Fla. 1995). To determine whether persons or entities are employers for the purposes of the Equal Pay Act, "courts look 'to the economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer." Id. (quoting Aimable v. Long and Scott

<u>Farms</u>, 20 F.3d 434, 439 (11th Cir. 1994), <u>cert. denied</u>, 513 U.S. 943 (1994)).

In light of the allegations in Plaintiff's complaint and the statute's broad definition of "employer," the Court cannot conclude at this stage in the proceedings that the ACCS Board of Trustees was not Plaintiff's "employer" within the meaning of the Equal Pay Act. Accordingly, Defendants' motion to dismiss Plaintiff's Equal Pay Act claim against the ACCS Board of Trustees for failure to allege "employer" status is due to be denied at this time.

### C. Plaintiff States a Viable Claim Against the ACCS Board of Trustees under Title VII and the Equal Pay Act for Failure to Remedy Discriminatory Conduct (Counts One and Two).

Defendants also argue that Plaintiff failed to state a viable claim against the ACCS Board of Trustees under Title VII, the ADEA,[9] and the Equal Pay Act because her complaint "is devoid of any allegation that the Board engaged in intentional gender discrimination against her." (Doc. 28 at 7). According to Defendants, "all factual allegations actually support the finding that [President] Mitchell, as the President of [Wallace College], made the decision to hire Thomas on the Salary Schedule L." (<u>Id.</u>).

_____

[9] Again, the Court need not consider this argument as it relates to Plaintiff's ADEA claims against the ACCS Board of Trustees, since the Board has Eleventh Amendment immunity against those claims.

Plaintiff counters that Defendant misapprehends the basis for her claim. Plaintiff states that she seeks to hold the ACCS Board of Trustees liable for failing to take immediate and appropriate corrective action to remedy employment-related discrimination by President Mitchell, of which the Board knew or should have known. (Doc. 44 at 18-19). Plaintiff points to allegations in the complaint that President Mitchell paid her "younger, male, less-qualified replacement a salary nearly 30 percent higher than [Plaintiff] had received for performing the same job." (Id. at 19) (citing Doc. 1 at ¶¶ 47-68). Plaintiff contends that in doing so, President Mitchell violated or failed to comply with the Board's salary practices and procedures and federal anti-discrimination law, and that the ACCS Board "knew or should have known of the [gender or age] discrimination and condoned, ratified, and otherwise allowed the . . . discriminatory conduct or practices to continue." (Id.) (citing Doc. 1 at ¶¶ 78, 96, 105). Plaintiff also points to allegations in the complaint that President Mitchell is directly responsible to the ACCS Board of Trustees and Chancellor Baker for the day-to-day operation of Wallace College, that President Mitchell was hired by the ACCS Board of Trustees' predecessor and serves at the pleasure of the current ACCS Board of Trustees, and that Chancellor Baker has authority to reverse any appointment or assignment of personnel determined to be contrary to statute or ACCS Board of Trustees policy. (Id. at 20)

(citing Doc. 1 at ¶¶ 30-31, 35). Plaintiff contends that these allegations suffice to state a plausible claim that the ACCS Board of Trustees unreasonably failed to remedy President Mitchell's age and/or gender discrimination against her. (Id.). Because the elements and burdens of proof differ under Title VII and the Equal Pay Act, the Court will separately address the parties' contentions as they relate to both types of claims.

    **i. Title VII.**

Although a Title VII complaint need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case . . . it must provide 'enough factual matter (taken as true) to suggest' intentional . . . discrimination." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (citations omitted), abrogated on other grounds by Iqbal, 556 U.S. 662. To establish a prima facie case of disparate pay under Title VII, the plaintiff must demonstrate that she held a position "similar to that of a higher paid employee who is not a member of her protected class." Crawford v. Carroll, 529 F.3d 961, 974-975 (11th Cir. 2008) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)). Here, Plaintiff alleges that her less-qualified male replacement was paid substantially more than her for performing the same duties, based on gender. (Doc. 1 at ¶¶ 37, 51, 66). Plaintiff has also alleged that the ACCS Board of Trustees is responsible for setting salary policies and procedures

at Alabama community colleges, including Wallace College, that Wallace College's President violated the Board's policies and discriminated against her based on her gender in setting the salary, and that the ACCS Board of Trustees and Chancellor Baker knew or should have known of the discriminatory conduct yet failed to correct it. (Id. at ¶¶ 24, 34, 36-39, 78). After carefully reviewing Plaintiff's allegations, the court concludes that, at least on the pleadings, Plaintiff has alleged a plausible claim for relief against the ACCS Board of Trustees for a disparate pay claim based on sex under Title VII. See Twombly, 550 U.S. at 556. Thus, Defendants' motion to dismiss Plaintiff's Title VII claims against the ACCS Board of Trustees on this basis is due to be denied.

### ii. Equal Pay Act.

Unlike Title VII, the Equal Pay Act establishes a form of strict liability. Meeks, 15 F.3d at 1019. Once a plaintiff establishes a prima facie Equal Pay Act case, the burden shifts to the employer to prove that the pay difference is justified by one of the exceptions listed in the Act. Miranda, 975 F.2d at 1532-33. If the employer cannot prove that "a factor other than sex" is responsible for the pay disparity, the plaintiff prevails. Id. at 1533. Importantly, a plaintiff bringing an Equal Pay Act claim "is not required to prove discriminatory intent on the part of the defendant." Id.

As previously noted, Defendants argue that the complaint lacks any allegation that the ACCS Board intentionally discriminated against Plaintiff based on her gender. (Doc. 28 at 7). But Plaintiff did not have to make such an allegation to state a claim under the Equal Pay Act. She merely needed to set forth sufficient factual allegations to establish that her employer paid different wages to an employee of the opposite sex for jobs that are "substantially equal." See Miranda, 975 F.2d at 1533. This she has done. Accordingly, Defendants' motion to dismiss Plaintiff's Equal Pay Act claim against the ACCS Board of Trustees on this basis is due to be denied.

### D. Plaintiff's Title VII Claims Should Not Be Dismissed for Failure to Exhaust Administrative Remedies (Counts One and Five).

Defendants argue that Plaintiff's Title VII and ADEA[10] claims against the ACCS Board of Trustees are subject to dismissal because Plaintiff failed to exhaust her administrative remedies in relation to those claims. (Doc. 28 at 7-9). Specifically, Defendants assert that Plaintiff failed to file a charge of discrimination with the EEOC that named the ACCS Board of Trustees as her employer; instead, Plaintiff's EEOC charge named Wallace College and President Mitchell as her employers. (Id. at 8).

---

[10] Because the ACCS Board has immunity against Plaintiff's ADEA claims, the Court need only consider Plaintiff's alleged failure to exhaust administrative remedies as it relates to her Title VII claims.

Defendants also assert that there is no indication that the ACCS Board of Trustees was given notice of Plaintiff's charge of discrimination or had the opportunity to participate in the administrative process. (Id.). Plaintiff counters that the naming of a defendant in an EEOC charge is a condition precedent to filing suit rather than a jurisdictional prerequisite, and that she was only required to plead generally that she fulfilled all conditions precedent prior to filing suit, which she did. (Doc. 44 at 21).

In their reply to Plaintiff's response, Defendants attach as an exhibit Plaintiff's 2017 EEOC charge and the Dismissal and Notice of Rights issued thereon by the EEOC. (Doc. 49-1). Defendants posit that the Court may properly consider the contents of the EEOC charge in deciding their motion to dismiss "because it is referenced in and central to the complaint." (Doc. 49 at 5).

In order to file an employment discrimination suit under Title VII, a plaintiff first must file a charge of discrimination with the EEOC and receive from the EEOC a "right to sue" notice. Dague v. Riverdale Athletic Ass'n, 99 F.R.D. 325, 326 (N.D. Ga. 1983). "The filing of such a charge and receipt of a right to sue notice is a condition precedent to maintaining an action under Title VII. Thus, generally a plaintiff may not maintain an action against a defendant whom he has not previously named in a charge to the EEOC." Id. (internal citation omitted). Although exhaustion of administrative remedies is a condition precedent to filing suit

26

under Title VII rather than a jurisdictional requirement, a plaintiff must still plausibly allege that he or she has successfully exhausted administrative remedies. <u>Harris v. Bd. of Trs. Univ. of Ala.</u>, 846 F. Supp. 2d 1223, 1236 (N.D. Ala. 2012). A plaintiff may do so by "generally alleg[ing] in his complaint that 'all conditions precedent to the institution of the lawsuit have been fulfilled.'" <u>Jackson v. Seaboard Coast Line R.R. Co.</u>, 678 F.2d 992, 1010 (11th Cir. 1982) (quoting Fed. R. Civ. P. 9(c)). The Eleventh Circuit generally applies a liberal standard when determining whether a plaintiff has exhausted her administrative remedies. <u>Neely v. City of Riverdale</u>, 2005 U.S. Dist. LEXIS 50764, at *12, 2005 WL 8152651, at *3 (N.D. Ga. Oct. 18, 2005), <u>report and recommendation adopted</u>, 2005 U.S. Dist. LEXIS 50765, 2005 WL 8152710 (N.D. Ga. Nov. 14, 2005).

In the third paragraph of her complaint, Plaintiff alleges:

3. Plaintiff, Kathy Moore, has fulfilled all administrative prerequisites and conditions precedent to the institution of this action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, and the Lilly Ledbetter Fair Pay Act of 2009 (hereinafter "Title VII"); and the Age Discrimination in Employment Act, 29 U.S.C. §§621 *et seq.* (hereinafter "ADEA"):

a. On or about May 25, 2017, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

b. On or about October 4, 2017, the EEOC issued and
mailed to Plaintiff a Dismissal and Notice of Rights
(including right to sue) regarding her EEOC charge.

  c. This complaint has been filed within ninety (90)
days of receipt of the notification from EEOC of
Plaintiff's right to sue on her EEOC charge.

(Doc. 1 at ¶3). Accordingly, there is no question that Plaintiff

has alleged that she successfully exhausted her administrative

remedies and fulfilled all conditions precedent to filing suit

under Title VII. This, however, does not end the Court's inquiry.

Defendants ask the Court to also consider the contents of the EEOC

charge attached as an exhibit to their reply brief, which they

contend provides "undisputed evidence of who [Plaintiff]

identified in the charge as her employer." (Doc. 49 at 5).

  "In the Rule 12(b) motion-to-dismiss context, a judge

generally may not consider materials outside of the four corners

of a complaint without first converting the motion to dismiss into

a motion for summary judgment." Pouyeh v. Bascom Palmer Eye Inst.,

613 F. App'x 802, 808 (11th Cir. 2015). Only when "a plaintiff

refers to a document in its complaint, the document is central to

its claim, its contents are not in dispute, and the defendant

attaches the document to its motion to dismiss" may a court

consider documents "beyond the face of the complaint and the

documents attached thereto when analyzing a motion to dismiss."

Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284

(11th Cir. 2007). "Courts have easily concluded that EEOC charges

are properly considered on the motion to dismiss because they are central to Plaintiff's cause of action given that the filing of an EEOC charge is a condition precedent to filing a Title VII claim." Wright v. Atlanta Pub. Schs., 2018 U.S. Dist. LEXIS 39446, at *13, 2018 WL 1249312, at *4 (N.D. Ga. Feb. 15, 2018), report and recommendation adopted, 2018 U.S. Dist. LEXIS 39208, 2018 WL 1247879 (N.D. Ga. Mar. 8, 2018).

As an initial matter, the Court notes that Defendants did not attach the EEOC charge to their motion to dismiss. Instead, they attached the document to their reply brief, which was filed *after* Plaintiff had already responded to their motion, in accordance with the Court's briefing schedule. Because of this, Plaintiff has not had the opportunity to confirm or challenge the authenticity of the charge attached by Defendants. This is critical, because a review of the attached EEOC charge suggests that Defendants failed to attach the charge in its entirety. The EEOC charge attached to Defendants' reply consists of only one page. However, at the end of the section of the charge describing the particulars of the alleged discrimination is written the phrase: "[CONT. on attached pages]". (Doc. 49-1 at 2). Thus, it appears that the page attached by Defendants is not the complete charge that Plaintiff filed with EEOC. In light of this, the Court must reject Defendants' assertion that the document provides undisputed evidence that Plaintiff failed to name the ACCS Board

of Trustees as her employer in her charge of discrimination to the EEOC. Accordingly, because Plaintiff has sufficiently alleged that she fulfilled all administrative prerequisites and conditions precedent to the institution of this action, Defendants' motion to dismiss Plaintiff's Title VII claims against the ACCS Board of Trustees for failure to exhaust administrative remedies is due to be denied.

### E. Plaintiff Has Failed to State a Valid Retaliation Claim Against Wallace College and the ACCS Board of Trustees Under Title VII and the ADEA[11] (Count Five).

Title VII protects employees who engage in statutorily protected activities, such as filing a charge of discrimination with the EEOC, against retaliation by an employer. Bullock v. Widnall, 953 F. Supp. 1461, 1472-73 (M.D. Ala. 1996). To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that she engaged in statutorily protected

---

[11] In its heading, count five of the complaint is labeled "TITLE VII and ADEA – Retaliation". (Doc. 1 at p. 20). However, the body of count five references only Title VII. (See id. at ¶¶ 107-09, 116). Plaintiff's ADEA claims against Wallace and the ACCS Board are due to be dismissed based on Eleventh Amendment immunity, and so it is not necessary for the Court to determine whether the complaint states a valid retaliation claim against those parties under the ADEA. However, even if count five is construed as a retaliation claim under both Title VII and the ADEA, the analysis in this section applies equally to both types of claims, since the ADEA "has an analytical framework identical to that of Title VII." Lovejoy v. Northway Health & Rehab. LLC, 2013 U.S. Dist. LEXIS 17292, at *1 n.1, 2013 WL 541509, at *1 n.1 (N.D. Ala. Feb. 8, 2013) (internal citation omitted).

expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Meeks, 15 F.3d at 1021. Since an adverse employment action is an indispensable element of a Title VII retaliation claim, a complaint must include allegations reflecting the existence of at least one adverse employment action against the plaintiff. McConnell v. Univ. of Ala. Healthcare Sys., 2016 U.S. Dist. LEXIS 101487, at *6-7, 2016 WL 4132260, at *3 (S.D. Ala. Aug. 3, 2016). Further, because an employer's "retaliatory conduct must be caused by a plaintiff's protected activity, only conduct occurring after the plaintiff's opposition to an unlawful employment practice can support a retaliation claim." McConnell, 2016 U.S. Dist. LEXIS 101487, at *17-18, 2016 WL 4132260, at *6.

The retaliation provision of Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. v. Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). In Title VII retaliation cases, only employer conduct that has a "materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related" is actionable. Crawford, 529 F.3d at 973. The test for whether a plaintiff has suffered an adverse employment action is whether the conduct complained of "might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." Id. at 974. Thus, in the retaliation context, a

"materially adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington, 548 U.S. at 68). The Eleventh Circuit has construed "applicable Supreme Court precedent in retaliation cases as 'strongly suggest[ing] that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered "materially adverse" to him and thus constitute adverse employment actions.'" Woods v. Austal, U.S.A., LLC, 2011 U.S. Dist. LEXIS 42361, at *112, 2011 WL 1380054, at *25 (S.D. Ala. Apr. 11, 2011) (quoting Crawford, 529 F.3d at 973 n.13).

In the instant case, the statutorily protected expression alleged by Plaintiff is the filing of her first EEOC charge on February 19, 2016, following her involuntary transfer from the Director of Student Support Services position. To avoid dismissal of her retaliation claim, Plaintiff must plausibly allege that she suffered an adverse employment action *after* Defendants learned of her protected activity.[12] See Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999). This she has failed to do.

---

[12] Because the filing of the EEOC charge on February 19, 2016 occurred after Plaintiff's reassignment from the Director of Student Support Services position effective October 1, 2015, that involuntary transfer cannot qualify as an adverse employment action for the purposes of Plaintiff's retaliation claim.

As an initial matter, the Court notes that Plaintiff has not alleged that her pay or benefits were reduced after she filed her first EEOC charge. Nor has Plaintiff alleged that the duties, prestige, or conditions of her employment changed in any way or, indeed, that she was personally affected at all by any actions taken by Defendants after she filed the EEOC charge. Plaintiff has also failed to allege that she applied for the Director of Student Support Services position during either period in which the job was posted in 2016.[13] Instead, the "adverse act" of which she complains is the hiring of Thomas as Director of Student Support Services in 2016 at a higher annual salary than she received when she occupied the position prior to her reassignment in 2015.

The Court finds that Plaintiff has not plausibly alleged that she suffered a materially adverse action in retaliation for her protected activity. The Thomas hiring had no effect, adverse or otherwise, on any term or condition of Plaintiff's employment. And, a reasonable worker would not be dissuaded from making a charge of discrimination based only upon actions that benefitted another person (i.e., Thomas) without having any actual impact on the worker herself. Since Plaintiff has failed to allege this

---

[13]   Nor does she dispute that she failed to apply for the position. (See Doc. 44 at 32).

necessary element, her complaint fails to state a claim of retaliation.[14]

### F. Defendants Have Not Established that Plaintiff's Title VII Claims Are Untimely (Counts One and Five).

Defendants argue that Plaintiff's Title VII claims appear to be untimely because she failed to file her lawsuit within ninety days of receiving her Dismissal and Notice of Rights ("right to sue notice") from the EEOC. (Doc. 28 at 12). Defendants note that after Plaintiff filed her second charge of discrimination, the EEOC issued a right to sue notice on October 4, 2017, and Plaintiff filed her lawsuit ninety-two days later on January 4, 2018. (Id.). Plaintiff responds that timely filing suit after receiving an EEOC right to sue notice is simply a condition precedent to filing suit, which she was only required to generally allege that she satisfied. (Doc. 44 at 37). According to Plaintiff, the court cannot dismiss her claim as untimely on a Rule 12(b)(6) motion, because she alleged that she filed her complaint within ninety days of receiving the right to sue notice from the EEOC and because it is not apparent from the face of the complaint that her claim is time-barred. (Id. at 37-38).

---

[14]     Defendants also argue that Plaintiff's retaliation claims fail because she cannot show that the filing of her EEOC charge was a but-for cause of the alleged adverse action. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). In light of the Court's finding that Plaintiff has not plausibly alleged that she suffered an adverse employment action, the Court will not address this argument.

"A plaintiff in a Title VII action is required to file suit within 90 days after receiving a 'right-to-sue letter,' although this is not a jurisdictional prerequisite, and a defendant must assert the failure to file suit within 90 days as a defense." Tie Qian v. Sec'y, Dep't of Veterans Affairs, 432 F. App'x 808, 810 (11th Cir. 2011). The limitations period begins to run upon notification of the plaintiff. Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999) (internal quotation marks and citation omitted). "However, a plaintiff is required to assume some minimal responsibility to ensure receipt." Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991). Recognizing this, courts within the Eleventh Circuit apply "a case-by-case approach in determining what constitutes receipt [of the right to sue notice] and when the time is triggered." Id. Once a defendant contests this issue, the plaintiff has the burden of establishing that she satisfied the ninety-day filing requirement. Tie Qian, 432 F. App'x at 810.

Failure to meet Title VII's filing deadline may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim. Merriweather v. Elekta, Inc., 2010 U.S. Dist. LEXIS 150852, at *7, 2010 WL 11496943, at *3 (N.D. Ga. Jan. 4, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 150851, 2010 WL 11497054 (N.D. Ga. Jan. 27, 2010); see also Mims v. Monroe Cnty. Bd. of Educ., 2014 WL 2508732, (S.D. Ala. June 4, 2014). However,

dismissal under Rule 12(b)(6) for failure to sue within ninety days of receiving the right to sue notice is appropriate only if it is apparent that the claim is time-barred from the face of the complaint and any other documents properly considered on a motion to dismiss. Henderson v. NCO Fin. Sys., 2010 U.S. Dist. LEXIS 32462, at *10-11, 2010 WL 1382737, at *4 (S.D. Ala. Mar. 12, 2010), report and recommendation adopted, 2010 U.S. Dist. LEXIS 32465, 2010 WL 1382668 (S.D. Ala. Mar. 31, 2010); Hodge v. Orlando Utils. Comm'n, 2009 U.S. Dist. LEXIS 116599, at *10-12, 2009 WL 5067758, at *4 (M.D. Fla. Dec. 15, 2009) (finding that charges of discrimination and right to sue notice that were not attached to amended complaint could be considered without converting motion to dismiss into a motion for summary judgment because they were central to plaintiff's discrimination claims and their authenticity was not in dispute).

When a plaintiff does not assert that she received a right to sue notice on a certain date, courts presume that the notice was received three days after its issuance. Henderson, 2010 U.S. Dist. LEXIS 32462, at *14, 2010 WL 1382737, at *5; see also Mims, 2014 WL 2508732 at *3; Merriweather, 2010 U.S. Dist. LEXIS 150852, at *7, 2010 WL 11496943, at *3 ("A Right to Sue Letter is presumed received three days after its issuance.").

Plaintiff's complaint alleges that "[o]n or about October 4, 2017, the EEOC issued and mailed to Plaintiff a Dismissal and

Notice of Rights (including right to sue) regarding her EEOC charge." (Doc. 1 at ¶3(b)). Plaintiff also alleges that her "complaint has been filed within ninety (90) days of receipt of the notification from EEOC of Plaintiff's right to sue on her EEOC charge." (Id. at ¶3(c)). Although Defendants did attach the right to sue notice as an exhibit to their reply brief, that document only confirms Plaintiff's allegation that the EEOC issued the document on October 4, 2017. Assuming without deciding that Plaintiff received her right to sue notice three days after mailing, or on Saturday, October 7, 2017, the last day for her to file her complaint would have been Friday, January 5, 2018.[15] Given that Plaintiff's lawsuit was filed on January 4, 2018, the undersigned concludes, based on the record before the Court, that Plaintiff's Title VII claims were timely filed.

### G. Eleventh Amendment Immunity Bars Plaintiff's § 1983 Claims for Damages and Retrospective Relief Against Chancellor Baker and the Trustee Defendants (Count Three)

Defendants argue that Plaintiff's Fourteenth Amendment claims for money damages brought pursuant to 42 U.S.C. § 1983 against Chancellor Baker and the individual Trustee Defendants in their official capacities must be dismissed, because a suit against a state official in his or her official capacity is treated as a

---

[15] The date of the event triggering the limitations period is excluded from the calculation. See Fed. R. Civ. P. 6(a)(1)(A).

suit against the state, which is immune from suit for monetary damages under the Eleventh Amendment. (Doc. 28 at 13). Plaintiff agrees that Eleventh Amendment immunity bars damage claims against Chancellor Baker and the Trustee Defendants in their official capacities, but she maintains that she is permitted to seek prospective equitable relief against these Defendants for continuing violations of federal law. (Doc. 44 at 39-40).

It is well-established that the Eleventh Amendment bars suits for monetary damages against a state by citizens of that state, unless the state waives its immunity or Congress abrogates the state's immunity. Cobb v. Marshall, 481 F. Supp. 2d 1248, 1257 (M.D. Ala. 2007). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and the state of Alabama has not waived its immunity. Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990). Lawsuits seeking damages against state officials in their official capacities "are deemed to be against the entity of which the officer is an agent." Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1503 (11th Cir. 1995) (internal quotation marks and citation omitted). "In these cases, the state is considered the real party in interest because an award of damages would be paid by the state." Carr, 916 F.2d at 1524. Here, Plaintiff acknowledges that the ACCS Board of Trustees as a corporate body is a state entity and that Chancellor Baker and the individual Trustee Defendants are state

officials. Thus, it is clear that Chancellor Baker and the Trustee Defendants are insulated from suit as to all claims for monetary damages asserted against them in their official capacities.

In addition to damages, Plaintiff seeks declaratory and injunctive relief, back pay plus interest, front pay, and costs and expenses, including attorneys' fees. Section 1983 official capacity claims against state officers that seek prospective equitable relief to end continuing violations of federal law are not treated as actions against the state and are not barred by the Eleventh Amendment. Cross, 49 F.3d at 1503; see also LaFleur v. Wallace State Cmty. Coll., 955 F. Supp. 1406, 1422 (M.D. Ala. 1996). Moreover, the Eleventh Amendment does not bar monetary relief, including costs and attorneys' fees, which is ancillary to the prospective equitable relief. Malone v. Chambers Cnty. Bd. of Comm'rs, 875 F. Supp. 773, 782 (M.D. Ala. 1994); see also LaFleur, 955 F. Supp. at 1423. However, such ancillary costs "cannot be in practical effect indistinguishable . . . from an award of damages against the state[,]" and a plaintiff's requested "relief should not be measurable in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." Thomas v. Devries, 834 F. Supp. 398, 402 (M.D. Ga. 1993), aff'd, 36 F.3d 95 (11th Cir. 1994) (internal quotation marks and citations omitted). Equitable requests for back pay and lost benefits are "a disguised claim for damages that are never

recoverable against state employees functioning in their official capacities." Id. Likewise, the Eleventh Amendment bars front pay as a permissible remedy against state officials in their official capacities. Ahmed v. Bd. of Trs. of Ala. Agric. & Mech. Univ., 2017 U.S. Dist. LEXIS 166782, at *16, 2017 WL 4532039, at *5 (N.D. Ala. Oct. 10, 2017). Accordingly, Plaintiff's § 1983 claims against Chancellor Baker and the Trustee Defendants in their official capacities are due to be dismissed to the extent they seek monetary damages, retrospective relief, lost pay or benefits, back pay with interest, and front pay.

> **H. The Complaint States a Viable § 1983 Supervisory Liability Claim against Chancellor Baker and the Trustee Defendants (Count Three).**

Last, Defendants assert that Plaintiff failed to state a viable § 1983 claim against Chancellor Baker and the Trustee Defendants because the chancellor of the ACCS and the individual members of the ACCS Board of Trustees lacked authority to make hiring decisions at Wallace College, except to appoint the college's President. (Doc. 28 at 14-15). Thus, they argue that Chancellor Baker and the Trustee Defendants could not have been acting under the color of state law to deprive Plaintiff of any right by hiring Thomas to her former position. (Id. at 15). Defendants also maintain that Chancellor Baker and the Trustee Defendants cannot be held liable under § 1983 on the basis of respondeat superior, and they contend that Plaintiff has failed to

adequately allege supervisory liability against Chancellor Baker and the Trustee Defendants. (Id. at 15-16). In response, Plaintiff states that she does not seek to hold Chancellor Baker and the Trustee Defendants liable on the basis of respondeat superior. (Doc. 44 at 45). According to Plaintiff, she has adequately alleged supervisory liability based upon the failure of Chancellor Baker and the Trustee Defendants to exercise their authority to end President Mitchell's gender-based pay discrimination against her. (Id. at 45-47).

"It is well established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or respondeat superior." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). However, supervisory officials may be held liable for a subordinate's constitutional violations on the basis of supervisory liability. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009). "[S]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Id.

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed

> subordinates to act unlawfully or knew that subordinates
> would act unlawfully and failed to stop them from doing
> so.

Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). A "failure to stop" claim brought under a theory of supervisory liability "only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it." Keating, 598 F.3d at 765.

In an earlier section of this report and recommendation, the Court referenced the allegations in the complaint that pertain to the authority of the ACCS Board of Trustees and Chancellor Baker over individual Alabama community colleges and their presidents. These include allegations that the ACCS Board of Trustees, acting through the Trustee Defendants, has authority to make governing rules and regulations and direct the expenditure of legislative appropriations for community colleges, and to prescribe faculty qualifications and set an annual salary schedule for each community college employee classification. (Doc. 1 at ¶24). With respect to Chancellor Baker, Plaintiff has alleged that he acts as chief executive officer of the ACCS; that he was appointed by, serves at the pleasure of, and performs such duties as are provided by law and otherwise assigned by the ACCS Board of Trustees; that he

executes and enforces the ACCS Board of Trustees' rules and regulations governing community colleges; and that his authority is authority delegated to him from the ACCS Board of Trustees for the operation, management, control, supervision, and regulation of community colleges. (Id. at ¶¶ 25-27). The complaint further alleges that Wallace is subject to, governed by, and under the ACCS Board of Trustees' authority with respect to supervision, administration, naming, and financing. (Id. at ¶28). With respect to President Mitchell, the complaint alleges that he is Wallace's chief executive officer, who was appointed by the ACCS Board of Trustees' predecessor, serves at the pleasure of the ACCS Board of Trustees, and is directly responsible to Chancellor Baker and the ACCS Board of Trustees for the college's day-to-day operation. (Id. at ¶¶ 29-31). Moreover, Plaintiff alleges that President Mitchell is required to fill vacant positions, including that of Director of Student Support Services, on certain salary schedules according to the practices and procedures set forth in the ACCS Uniform Guidelines, and that Chancellor Baker has the authority to reverse any personnel appointment or assignment determined to be contrary to either statute or policies adopted by the ACCS Board of Trustees. (Id. at ¶¶ 34-35).

With regard to the specific constitutional violation alleged, the complaint asserts that Chancellor Baker and the Trustee Defendants were aware of President Mitchell's violations of the

Uniform Guidelines, ACCS Board of Trustees policies, ACCS salary schedules, and Wallace's salary schedule C3 as approved by the chancellor and board, and were further aware of the pay disparity between Plaintiff and her substantially younger male successor but "took no action to reverse or otherwise rectify defendant Mitchell's violation of Board policies and procedures and federal anti-discrimination law." (Id. at ¶¶ 38-39). Additionally, Plaintiff alleges that Chancellor Baker and the Trustee Defendants "knew or should have known of the gender discrimination; and condoned, ratified, and otherwise allowed the sexually discriminatory conduct or practices to continue." (Id. at ¶ 96).

While Plaintiff does not allege that Chancellor Baker or the Trustee Defendants personally participated in the alleged constitutional violation, she does allege facts that plausibly support an inference that Chancellor Baker and the Trustee Defendants knew of President Mitchell's continuing gender-based pay discrimination against Plaintiff, had the authority to stop or require President Mitchell to discontinue such discrimination, and failed to exercise such authority. Therefore, Defendants' motion to dismiss Plaintiff's § 1983 claims against Chancellor Baker and the Trustee Defendants is due to be denied.

**V.    CONCLUSION**

For the reasons set forth above, the undersigned RECOMMENDS that Defendants' motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted (Docs. 28, 41) be GRANTED IN PART and DENIED IN PART, as follows:

(Count One) Defendants' motion to dismiss Plaintiff's Title VII gender discrimination claims is due to be DENIED;

(Count Two) Defendants' motion to dismiss Plaintiff's Equal Pay Act claim against the ACCS Board of Trustees is due to be DENIED;

(Count Three) Defendants' motion to dismiss Plaintiff's § 1983 claims against the Trustee Defendants and Chancellor Baker for failure to state a claim is due to be DENIED;

To the extent Plaintiff brings § 1983 claims for monetary damages, retrospective relief, lost pay or benefits, back pay with interest, and front pay against the Trustee Defendants and Chancellor Baker, those claims are barred by the Eleventh Amendment, and Defendants' motion to dismiss those claims is due to be GRANTED;

(Count Four) Plaintiff's ADEA age discrimination in pay claims against Wallace College and the ACCS Board of Trustees are barred by the Eleventh Amendment, and Defendants' motion to dismiss those claims is due to be GRANTED;

(Count Five) To the extent Plaintiff brings retaliation claims against Wallace College and the ACCS Board of Trustees under the ADEA, those claims are barred by the Eleventh Amendment, and Defendants' motion to dismiss those claims is due to be GRANTED;

Defendants' motion to dismiss Plaintiff's Title VII retaliation claim for failure to state a claim is due to be GRANTED.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **8th** day of **March, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
